NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| ABDULLAH TAHLAWI, | : |
| | : CIVIL ACTION NO. 11-6548 (MLC) |
| Petitioner, | : |
| | : **MEMORANDUM OPINION** |
| v. | : |
| UNITED STATES OF AMERICA, | : |
| | : |
| Respondent. | : |

**COOPER**, **District Judge**

Petitioner, with the assistance of counsel, petitions for a writ of error <u>coram</u> <u>nobis</u> to set aside his plea of guilty entered before the Court in 2005. See 28 U.S.C. § 1651(a). Petitioner claims that he received ineffective assistance of counsel in violation of the Sixth Amendment when his counsel told him that he could return to the United States upon completion of his probation period. The Petition will be denied.

**BACKGROUND**

**I.     Relevant Statutory Provisions**

**A.     18 U.S.C. § 371**

This statute states:

> If two or more persons conspire either to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose, and one or more of such persons do any act to effect the object of the conspiracy, each shall be fined under this title or imprisoned not more than five years, or both.
>
> If, however, the offense, the commission of which is the object of the conspiracy, is a misdemeanor only, the punishment for such conspiracy shall not exceed the maximum punishment provided for such misdemeanor.

**B.     8 U.S.C. § 1182(a)(2)(A)(i)(I)**

Pursuant to this statute, an alien convicted of committing a crime involving moral turpitude is ineligible to receive a visa and ineligible to be admitted to the United States.

**C.     28 U.S.C. § 1651(a)**

This statute enables the federal courts to "issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a). "The writ of error <u>coram</u> <u>nobis</u> is an 'infrequent' and 'extraordinary' form of relief that is reserved for 'exceptional circumstances.'" <u>United States v. Babalola</u>, 248 Fed.Appx. 409, 411 (3d Cir. 2007) (citing <u>Carlisle v. United States</u>, 517 U.S. 416, 429 (1996)). A petition for writ of error <u>coram</u> <u>nobis</u> "is used to attack allegedly invalid convictions which have continuing consequences, when the petitioner has completed serving his sentence and is no longer 'in custody' for purposes of 28 U.S.C. § 2255". <u>Babalola</u>, 248 Fed.Appx. at 411. "A <u>coram</u> <u>nobis</u> petitioner must . . . show that (1) he is suffering from continuing consequences of the allegedly invalid conviction; (2) there was no remedy available at the time of trial; and that (3) sound reasons exist for failing to seek relief earlier." <u>Id.</u> at 412 (internal quotes and cites omitted). Although a petitioner seeking a writ of error <u>coram</u> <u>nobis</u> faces a heavy burden, the United States Supreme Court "ha[s] reaffirmed the continued existence of <u>coram</u> <u>nobis</u> relief in the appropriate circumstances." <u>Id.</u> (citing <u>United States v. Morgan</u>, 346 U.S. 502, 511 (1954)).

**II.     Facts**

Petitioner was charged in 2002 for permitting someone else to take the Test of English as a Foreign Language exam on his behalf. <u>See</u> Crim. No. 02-358 (MLC). In 2005, petitioner entered a plea of guilty to one count of conspiracy to commit mail fraud in violation of 18 U.S.C. § 371. Petitioner was sentenced to a term of two-years probation and a $500 fine.

Petitioner argues that before entering the plea, his attorney told him (1) that he may have to leave the United States due to the guilty plea, but (2) that he "would be able to return to the United States once [he] had completed [his] term of probation". (See dkt. entry no. 1-4, Tahlawi Decl. at ¶ 8.) Upon being sentenced, petitioner relocated his family to Germany. (Id. at ¶ 11.) In 2009, petitioner's family returned to the United States largely due to the medical issues of petitioner's son, who is a United States citizen. (Id.) But petitioner was denied an immigrant visa to return to the United States in light of the 2005 conviction, which is considered a crime of moral turpitude. See 8 U.S.C. § 1182(a)(2)(A)(i)(I).

Petitioner now argues in the Petition that his counsel was ineffective, as counsel allegedly told petitioner that he could return to the United States upon completing the period of probation. Petitioner asserts that "[h]ad I known a guilty plea would bar me from entering the United States and that, at best, I would only be allowed to return if I could somehow receive a special waiver, I would not have pled guilty, but would have asked my attorney to seek an alternative resolution and failing that, would have gone to trial." (Tahlawi Decl. at ¶ 10.) Respondent opposes the Petition, and petitioner has replied. (See dkt. entry nos. 15, 16.)

## DISCUSSION

A petitioner asserting an ineffective assistance of counsel claim must first show – in view of all of the circumstances – that counsel's performance fell below an objective standard of reasonableness. See Strickland v. Washington, 466 U.S. 668, 688 (1984); Ross v. Varano, 712 F.3d 784, 798 (3d Cir. 2013). A petitioner must identify acts or omissions that are alleged not to have been the result of reasonable professional judgment. See Strickland, 466 U.S. at 690. "The court must then determine whether, in light of all of the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." Id.

A petitioner must then affirmatively show prejudice, which is found where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. But "a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." Id. at 697.

Strickland applies if counsel's effectiveness as to the entry of a plea of guilty is challenged. See Hill v. Lockhart, 474 U.S. 52, 58 (1985). "[I]n order to satisfy the 'prejudice' requirement, the [petitioner] must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Id. at 59.

Counsel's "advice regarding deportation is not categorically removed from the ambit of the Sixth Amendment right to counsel." Padilla v. Kentucky, 559 U.S. 356, 366 (2010). Furthermore, "[i]t is quintessentially the duty of counsel to provide [the] client with available advice about an issue like deportation and the failure to do so clearly satisfies the first prong of the Strickland analysis." Id. at 371 (internal quotes and cite omitted).

The parties here dispute whether Padilla, which was decided in 2010, can be retroactively applied to this Petition concerning a judgment of conviction entered in 2005. In analyzing the retroactivity of Padilla, the Supreme Court noted that Teague v. Lane, 489 U.S. 288 (1989) "makes the retroactivity of our criminal procedure decisions turn on whether they are novel." Chaidez v. United States, 133 S.Ct. 1103, 1107 (2013). Only when the Supreme Court applies "a settled rule may a person avail herself of the decision on collateral review." Id. at 1107. Thus, the Petition here would fail if Padilla declared a new rule. Id.

4

The Supreme Court stated that it had previously granted relief under Strickland in various contexts, but had not suggested that doing so required a new rule. See id. at 1108. Thus, Chaidez stated that Padilla "would not have created a new rule had it only applied Strickland's general standard to yet another factual situation -- that is, had Padilla merely made clear that a lawyer who neglects to inform a client about the risk of deportation is professionally incompetent." Id. However, Chaidez explained that:

> Padilla did something more. Before deciding if failing to provide such advice "fell below an objective standard of reasonableness," Padilla considered a threshold question: Was advice about deportation "categorically removed" from the scope of the Sixth Amendment right to counsel because it involved only a "collateral consequence" of a conviction, rather than a component of the criminal sentence . . . In other words, prior to asking *how* the Strickland test applied ("Did this attorney act unreasonably?"), Padilla asked *whether* the Strickland test applied ("Should we even evaluate if this attorney acted unreasonably?") . . . [T]hat preliminary question about Strickland's ambit came to the Padilla Court unsettled – so that the Court's answer ("Yes, Strickland governs here") required a new rule.

Id. Accordingly, the Supreme Court held that it "announced a new rule in Padilla. Under Teague, defendants whose convictions became final prior to Padilla therefore cannot benefit from its holding." Id. at 1113.

It thus appears that this Petition should be denied, as Padilla declared a new rule. But petitioner makes two arguments that this Petition is not barred by Chaidez.

He first argues that Teague does not apply to attacks on federal convictions. However, the Chaidez petitioner pled guilty to two federal counts of mail fraud, and the Supreme Court applied Teague in Chaidez and determined that Padilla would not be applied retroactively. Id. at 1107, 1113. Nevertheless, the Supreme Court stated in a footnote that it was specifically declining to address whether Teague applies to federal convictions because the issue had not been presented in the lower courts. Id. at 1113 n.16. Petitioner's arguments to the contrary notwithstanding, "[a]mple authority supports the Supreme Court's application of Teague in the

5

context of a collateral challenge to a federal conviction. In addition to Chaidez, many federal courts have applied the Teague retroactivity analysis to challenges to federal convictions." United States v. Dwumaah, No. 05-157, 2013 WL 1233420, at *4 (M.D. Pa. Mar. 27, 2013) (citing United States v. Amer, 681 F.3d 211 (5th Cir. 2012); United States v. Chang Hong, 671 F.3d 1147 (10th Cir. 2011); United States v. Orocio, 645 F.3d 630 (3d Cir. 2011), abrogated on other grounds by Chaidez, 133 S.Ct. at 1106-07; Valentine v. United States, 488 F.3d 325 (6th Cir. 2007); Gilberti v. United States, 917 F.2d 92, 94 (2d Cir. 1990)); see In re Ifenatuora, No. 10-1492, 2013 WL 2677337, at *2 (4th Cir. June 14, 2013) (finding Teague "equally applicable to federal convictions" where petitioner sought to avoid Chaidez holding); United States v. Vy Thi Thach, No. 11-35435, 2013 WL 1408798, at *1 (9th Cir. Apr. 9, 2013) ("That the Supreme Court applied Teague in evaluating Chaidez's challenge to her federal conviction reinforces our authority holding that Teague's framework applies to collateral attacks on federal convictions."); Van Daalwyk v. United States, 21 F.3d 179, 183 (7th Cir. 1994) ("[W]e do not think that federal prisoners who challenge their convictions on collateral review *should* be entitled to retroactive application of decisions which would not be retroactively applied to state prisoners. To begin with, it is clear that § 2255 was intended to afford federal prisoners a remedy identical in scope to federal habeas corpus. Further, to allow federal prisoners on collateral review the benefit of a new rule unavailable to similarly situated state prisoners is simply inequitable and, in our view, not justified merely be the absence of like comity concerns.") (internal quotes and cites omitted). Accordingly, the Court rejects this argument because Teague is applicable to federal convictions.

Petitioner also argues that Chaidez – which involved a claim of lack of immigration advice by an attorney – does not bar his claim of ineffective assistance of counsel because he alleges that counsel misinformed him about returning to the United States, as opposed to failed to

6

give any advice as to the immigration ramifications of a plea of guilty. Padilla rejected this distinction, and stated that "there is no relevant difference between an act of commission and an act of omission in this context." 559 U.S. at 370 (internal quotes omitted). Furthermore, Chaidez noted that before Padilla, three federal circuits (although not the Third Circuit) held that "misstatements about deportation could support an ineffective assistance claim." 133 S.Ct. at 1112. However, Chaidez continued by explaining that did not establish "that all reasonable judges, prior to Padilla, thought they were living in a Padilla-like world." Id.

Petitioner relies here on Meyers v. Gillis, 142 F.3d 664, 666-68 & n.2 (3d Cir. 1998), and Meyers v. Gillis, 93 F.3d 1147, 1153-54 (3d Cir. 1996), and claims that even before Padilla, "the Third Circuit had held that a defendant cannot assert a claim of ineffective assistance of counsel for failure to advise on so-called collateral consequences of a guilty plea, but he is permitted to pursue such a claim if he is given erroneous advice about collateral consequences." (Dkt. entry no. 16, Pet'r Reply Br. at 5.) In Meyers, 142 F.3d at 667 n.2, the Third Circuit Court of Appeals noted that "a defendant does not have a constitutional right to be provided with parole eligibility information prior to entering a plea. However . . . any information that is provided by defense counsel must be accurate." Nevertheless, Chaidez held that it was Padilla that first established that advice about the immigration consequences of a plea could be actionable as ineffective assistance of counsel. See Chaidez, 133 S.Ct. at 1110 ("It was Padilla that first rejected that categorical approach – and so made the Strickland test operative – when a criminal lawyer gives (or fails to give) advice about immigration consequences.") Thus, the Court finds that petitioner's reliance on Meyers to support his ineffective assistance of counsel claim is misplaced in this context.

Further illustrating that Meyers does not apply here is the Babalola decision. See 248 Fed.Appx. at 411-13. The Babalola petitioner brought a similar petition for a writ of error coram

7

nobis, arguing that "her attorney had provided her with 'misinformation' about the effect a guilty plea would have on her immigration status" when he advised that she "had nothing to worry about" as to the effect a guilty plea would have on citizenship and possible deportation. Id. at 411. Babalola held that "[i]t is an open question in this court whether counsel's error in advising a client regarding the collateral consequences of a guilty plea – such as the effect of the plea on future immigration proceedings – is fundamental to that conviction such that it can constitute objectively unreasonable representation under the first prong of Strickland." Id. at 413. If Meyers had been applicable to the Babalola petitioner, then the Third Circuit Court of Appeals would not have found that the issue of whether counsel's misinformation as to deportation proceedings was an "open question".

## CONCLUSION

Chaidez holds that Padilla announced a new rule. As petitioner's conviction became final before Padilla was decided, the Padilla rule cannot be applied retroactively to provide him with relief. Chaidez, 133 S.Ct. at 1113. Thus, this Petition for a writ of error coram nobis asserting an ineffective assistance of counsel claim will be denied. The Court will issue an appropriate order and judgment.

                                  s/ Mary L. Cooper
                                  **MARY L. COOPER**
                                  United States District Judge

Dated: October 15, 2013